UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| LISA K., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-CV-1867-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## **INTRODUCTION**

Plaintiff Lisa K. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF. No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion (ECF No. 9) is **DENIED**, and the Commissioner's motion (ECF No. 10) is **GRANTED**.

## **BACKGROUND**

On June 6, 2018, Plaintiff protectively filed a Title II application for a period of disability and DIB, alleging disability beginning November 10, 2017 (the disability onset date), due to fibromyalgia; rheumatoid arthritis; degenerative disc disease; chronic fatigue syndrome; Hashimoto's disease; depression; anxiety; impingement syndrome; rotator cuff tendonitis; hypothyroidism; and arthritis. *See* Transcript (Tr.) 29, 31-32, 208-09, 229. Plaintiff's claims

were denied initially on August 2, 2018, after which she requested an administrative hearing. Tr. 29.

Plaintiff's hearing was held before Administrative Law Judge Laura Michalec Olszewski (the "ALJ") on February 27, 2020, in Buffalo, New York. Tr. 29. Plaintiff appeared and testified at the hearing and was represented by Justine Miller, an attorney. Tr. 29, 47-99. Kenneth R. Smith, an impartial vocational expert ("VE"), also appeared and testified at the hearing. Tr. 29.

The ALJ issued an unfavorable decision on June 1, 2020, finding that Plaintiff was not disabled. Tr. 29-41. On October 23, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's June 1, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

2

II.     **The Sequential Evaluation Process**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant

is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-

71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial

gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not,

the ALJ proceeds to step two and determines whether the claimant has an impairment, or

combination of impairments, that is "severe" within the meaning of the Act, meaning that it

imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §

404.1520(c). If the claimant does not have a severe impairment or combination of impairments,

the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues

to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically

equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the

"Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a

Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not,

the ALJ determines the claimant's residual functional capacity, which is the ability to perform

physical or mental work activities on a sustained basis notwithstanding limitations for the

collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits

him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the

Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her June 1, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since November 10, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia; rheumatoid arthritis; degenerative disc disease; chronic fatigue syndrome; Hashimoto's disease; depression; anxiety; impingement syndrome; rotator cuff tendonitis; hypothyroidism; and arthritis (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] in that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour workday, and stand and/or walk for six hours in an eight hour workday, except she: can occasionally climb ramps and stairs, but should never climb ladders and scaffolds; can occasionally balance and stoop; and should never kneel, crouch and crawl. The claimant should avoid reaching overhead but can frequently reach, push and pull in all other directions up to the limits of light work. She should work in a low stress environment, defined as occasional use of judgment, occasional decision making and occasional changes in the work setting. She can perform simple and routine tasks.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565.

7. The claimant was born on October 16, 1970 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 10, 2017, through the date of this decision (20 CFR 404.1520(g)).

Tr. 29-41.

Accordingly, the ALJ determined that for a period of disability and disability insurance benefits protectively filed on June 6, 2018, Plaintiff is not disabled under sections 216(i) and 223(d) of the Act. Tr. 41.

## **ANALYSIS**

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ rejected the physical medical opinions of record and, in so doing, failed to close evidentiary gaps. *See* ECF No. 9-1 at 21-23. In particular, Plaintiff takes issue with the ALJ's consideration of the opinions of treating chiropractor Brian K. Scharf, D.C. ("Dr. Scharf"); primary care physician Timothy Siepel, M.D. ("Dr. Siepel"); consultative examiner Russell Lee, M.D. ("Dr. Lee"); state agency reviewing consultant C. Krist, D.O. ("Dr. Krist"); and endocrinologist Amy L. Wnek, M.D. ("Dr. Wnek"). *See id*. at 22-23. Second, Plaintiff contends that the ALJ's mental RFC finding was not consistent with the opinion of consultative psychological examiner Agnes R. Jonas,

Psy.D. ("Dr. Jonas"), whose opinion the ALJ found persuasive. *See id*. at 24-26. Accordingly, argues Plaintiff, the ALJ's physical and mental RFC findings were not supported by substantial evidence. *See id*. at 21-26.

In response, the Commissioner argues that the ALJ properly relied on the totality of the evidence in the record in assessing Plaintiff's RFC finding, including not only the medical opinion evidence, but also Plaintiff's generally unremarkable physical and mental examination findings and her wide variety of activities of daily living. *See* ECF No. 10-1 at 11-19. As such, argues the Commissioner, the ALJ's RFC finding was supported by substantial evidence. *See id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ properly evaluated the totality of the relevant evidence and exercised her discretion in resolving the evidentiary conflicts in the record to reach a well-supported RFC finding for a range of unskilled light work. Furthermore, the ALJ appropriately considered the supportability and consistency of the opinions in the record in her RFC analysis, and her findings were supported by substantial evidence.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e),

404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole."

*Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff— not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed her application on June 6, 2018, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer

or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not

provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's finding that Plaintiff had the physical RFC for a range of unskilled light work. Tr. 34-39.  *See* 20 C.F.R. §§ 404.1527, 416.927.

First, the ALJ reasonably found the June 2018 opinion of chiropractor Dr. Scharf only "somewhat persuasive." Tr. 38. Dr. Scharf opined that Plaintiff could frequently lift and carry up to 25 pounds, but she was limited to sitting for one hour and standing/or walking for one hour before experiencing increased pain. Tr. 620. The ALJ noted that Dr. Scharf's opinion that

Plaintiff could lift and carry up to 25 pounds was consistent with findings that, although she complained of neck pain and had limited right shoulder range of motion with bursitis, she had near-to-full strength in the upper extremities, and normal cervical spine range of motion. Tr. 21, 338, 396, 618, 627, 654-56. In 2019, x-rays of Plaintiff's bilateral shoulders were normal. Tr. 802.

However, as the ALJ noted, Dr. Scharf did not complete the entire questionnaire, including estimating the total amount of time that Plaintiff could sit and stand/walk during a typical workday. Tr. 38. The ALJ also reasonably did not adopt Dr. Scharf's opinion that Plaintiff could only stand/walk and sit for one hour because it was based on Plaintiff's subjective complaints of pain and inconsistent with findings that she had near-to-full strength throughout the extremities, intact gait, normal neurological findings, full range of motion of the lower extremities, intact reflexes, normal lumbar spine range of motion, and generally negative straight leg raising tests. Tr. 338, 353, 439, 472, 488, 491, 500-01, 515, 575, 585, 590, 593, 612, 618, 626-27, 644, 654, 727, 734, 744, 747, 775, 876, 879, 980. *See Gates v. Astrue*, 338 F. App'x 46, 49 (2d Cir. 2009) (ALJ properly discounted doctor's findings when findings were based on the "unreliable foundation" of claimant's unsupported allegations).

For the same reason, the ALJ found Dr. Scharf's September 2019 opinion "not persuasive" because it was inconsistent with the clinical findings. Tr. 38. In that opinion, Dr. Scharf stated that Plaintiff's symptoms would frequently interfere with her attention and concentration; she could only sit and stand for ten minutes at a time, with a need to include periods of walking around during a typical workday; and she would likely be absent from work more than four days per month. Tr. 686-87. As the ALJ explained, the extreme degree of restriction assessed by Dr. Scharf, including his findings with respect to frequent interference

with attention and concentration, a need for frequent changes of position, and significant absenteeism, were neither supported by, nor consistent with, the substantial evidence of record showing fairly benign findings and conservative management. Tr. 39.

In addition, the ALJ properly found Dr. Scharf's conclusory statement that Plaintiff was totally disabled neither valuable nor persuasive since the issue as to whether a claimant is disabled is an issue reserved to the Commissioner. Tr. 39, 687. *See* 20 C.F.R. § 404.1520b(c) (a statement on an issue reserved to the Commissioner, such as a statement that a claimant is or is not disabled, is evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.").

Next, the ALJ considered an October 2019 Medical Source Statement submitted by primary care physician Dr. Siepel. Tr. 39, 751-55. Dr. Siepel indicated that he had seen Plaintiff on only two occasions before providing the statement. Tr. 751. In addition, he declined to complete any of the itemized questions relating to functional limitations, stating that he had not tested any of Plaintiff's exertional functions. Tr. 39, 753. As such, the ALJ reasonably found Dr. Siepel's opinion to be vague and "inherently neither valuable nor persuasive." Tr. 39.

The ALJ also considered the July 2018 opinion of consultative examiner Dr. Lee. Tr, 37, 624-29.  Dr. Lee noted that Plaintiff acknowledged cooking seven days a week, cleaning seven days a week, doing laundry seven days a week, going shopping twice a week, showering seven days a week, and dressing herself seven days a week, but he added that normal household tasks were accompanied by significant pain. Tr. 625. As the ALJ noted, Dr. Lee identified 17 of 18 positive fibromyalgia trigger points, but otherwise documented largely unremarkable physical examination findings, including normal gait, full squat, an ability to heel and toe walk without difficulty, full range of motion of all major musculoskeletal groups, and normal

neurologic testing, including physiologic and equal deep tendon reflexes, no sensory deficits, and 5/5 strength in the upper and lower extremities. Tr. 37, 626-27.

Dr. Lee's opined limitations that Plaintiff had mild-to-moderate limitations with activities involving prolonged sitting, prolonged standing, walking great distances, climbing stairs, bending, lifting, and carry heavy objects (Tr. 628) are consistent with the exertional requirements of light work. *See Tankisi v. Comm'r of Soc.Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (holding that a consulting physician's opinion that a claimant had "[m]ild to moderate" limitations in "sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting" was sufficient, coupled with the other evidence, to support the ALJ's RFC finding); *Harrington v. Colvin*, No. 14-CV-6044P, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015) (collecting cases); *Nelson v. Colvin*, No. 12-CV-1810, 2014 WL 1342964, at *12 (E.D.N.Y. Mar. 31, 2014) ("the ALJ's determination that [p]laintiff could perform 'light work' is supported by [the doctor's] assessment of 'mild to moderate limitation for sitting, standing, walking, bending, and lifting weight on a continued basis'") (citing *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir.2013)). Therefore, the ALJ's RFC finding that Plaintiff could do light work accounts for the moderate physical limitations identified by Dr. Lee. Tr. 35-36.

As the ALJ noted, state agency medical consultant Dr. Krist's finding that Plaintiff could occasionally lift and/or carry up to 20 pounds, stand and/or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday was similarly consistent with a capacity for a full range of light work. Tr. 34-35, 116. Dr. Krist also supported his finding by pointing to normal musculoskeletal findings and negative cervical spine x-rays. Tr. 117. Additionally, the assessments of medical consultants, like Dr. Krist, can constitute substantial

evidence supporting the ALJ's findings where, as here, such assessments are supported by the evidence in the record as a whole. *See* 20 C.F.R. § 404.1513a(b)(1) (State agency medical consultants are highly qualified physicians who are also experts in the evaluation of the medical issues involved in disability claims under the Act); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (ALJ's finding supported by substantial evidence, including assessment of state agency physician); *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (assessment of state agency physician provided substantial evidence to support ALJ's RFC finding).

The ALJ also discussed the March 2020 opinion of endocrinologist Dr. Wnek, who reported treating Plaintiff for her hypothyroidism. Tr. 35, 1000. Dr. Wnek stated that Plaintiff only rarely experienced symptoms severe enough to interfere with attention and concentration for simple tasks and opined that Plaintiff could sit for six hours and stand and/or walk for six hours during an eight-hour workday, all of which is consistent with the ALJ's RFC finding. Tr. 34, 1000. Based on the foregoing, the ALJ appropriately considered the supportability and consistency of the opinions in the record, and her physical RFC finding was supported by substantial evidence.

Furthermore, contrary to Plaintiff's argument, the ALJ was not required to rely on an opinion that mirrored the RFC. *See* ECF No. 9-1 at 22. Plaintiff's argument wrongly presumes that RFCs are medical determinations, and thus, outside the ALJ's expertise. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§

404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Thus, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Furthermore, an ALJ is permitted to craft an RFC based on medical records and other evidence, without a supportive medical opinion at all. *See, e.g.*, *Corbiere v. Berryhill*, 760 F. App'x 54, 56-57 (2d Cir. 2019) (summary order) (affirming ALJ's physical RFC assessment based on objective medical evidence); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8-9 (2d Cir. 2017) (summary order) (affirming where ALJ rejected sole medical opinion in record speaking to mental functioning); *Johnson v. Colvin*, 669 F. App'x 44, 46-47 (2d Cir. 2016)

(summary order) (affirming where ALJ relied on variety of evidence including claimant's testimony and doctor's letter vaguely asserting severe limitations but noting improvement).

Accordingly, in addition to the opinion evidence, the ALJ also considered the objective medical findings of record and Plaintiff's daily activities. *See* 20 C.F.R. § 404.1529(c)(3) (providing that the SSA "will consider all of the evidence presented, including information about [a claimant's] prior work record, [a claimant's] statements about [her] symptoms, evidence submitted by [her] medical sources, and observations by [the SSA's] employees and other persons").

Physical findings showed that Plaintiff was neurologically intact and had an intact gait, near-to-full muscle strength throughout the upper and lower extremities, normal neurological findings, full range of motion of the lower extremities, intact reflexes, normal lumbar spine range of motion, and generally negative straight leg raising tests. Tr. 338, 353, 439, 472, 488, 491, 500-01, 515, 575, 585, 590, 593, 612, 618, 626-27, 644, 654, 727, 734, 744, 747, 775, 876, 879, 980. Plaintiff had normal x-rays of the hands, wrists, sacroiliac joints, ankles, and feet bilaterally. Tr. 424-26. Cervical spine x-rays ranged from normal to showing only mild disc degeneration. Tr. 434, 645, 651-52, 947. Also, Plaintiff reported improvement in her back pain with chiropractic care. Tr. 335.

In addition, although she complained of pain, Plaintiff had a wide variety of activities of daily living including walking, preparing meals, performing chores, shopping, caring for her personal needs, driving, socializing, listening to music, and using a computer and tablet. Tr. 56, 438, 570, 625, 632-33. She testified that she played games and scrolled through social media on her smartphone. Tr. 60. Plaintiff traveled to Las Vegas in 2020. Tr. 80. Thus, the clinical

findings coupled with Plaintiff's activities of daily living provided ample support for the ALJ's physical RFC finding.

For similar reasons, Plaintiff's argument that the ALJ's mental RFC finding was unsupported by substantial evidence because it was inconsistent with the opinion of psychological consultative examiner Dr. Jonas likewise fails. *See* ECF No. 9-1 at 24-26. Dr. Jonas opined that Plaintiff had no limitations in understanding, remembering, or applying simple directions and instructions; regulating emotions, controlling behavior, and maintaining well-being or maintaining personal hygiene; and being aware of normal hazards and taking appropriate precautions. Tr. 633. She also opined that Plaintiff had moderate limitations in understanding, remembering, or applying complex directions and instructions; sustaining an ordinary routine and regular attendance at work; and sustaining concentration and performing a task at a consistent pace. *Id*.

Plaintiff asserts that the ALJ's mental RFC assessment improperly rejected Dr. Jonas's opinion that Plaintiff had moderate limitations in sustaining an ordinary routine and regular attendance at work and sustaining concentration and performing a task at a consistent pace because it does not specifically address these limitations. *See* ECF No. 9-1 at 26. However, as discussed above, the ALJ does not need to rely on a medical opinion in assessing RFC. Moreover, there is no error simply because the ALJ did not incorporate every moderate limitation by name. Moderate mental limitations do not indicate disabling functional restrictions that would prevent a claimant from performing the basic mental demands of unskilled work. *See Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010) ("None of the clinicians who examined [Zabala] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations," and

finding RFC for unskilled work was well supported; *Whipple v. Astrue*, 479 F. App'x. 367, 370 (2d Cir. 2012) (finding ALJ's RFC for simple tasks in a low stress environment was supported by opinions of consultative and review physicians that Whipple was only mildly and moderately impaired by his mental impairments); *see also Mayer v. Comm'r of Soc. Sec.*, No. 18-CV-0062, 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) ("The Second Circuit has repeatedly held that 'moderate' limitations do not preclude a plaintiff's ability to perform unskilled work.") (collecting cases); *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 315 (W.D.N.Y. 2013) (concluding that an RFC determination limiting a claimant to simple, routine, repetitive tasks and not production rate or pace work was consistent with ALJ's assessment that claimant had moderate difficulties with concentration, persistence, or pace); *Landers v. Colvin*, No. 14-CV-1090, 2016 WL 1211283, at *4 (Mar. 29, 2016) (finding determination that claimant was limited to "simple, repetitive, and routine tasks" accounted for limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance).

As discussed above, the ALJ also considered the objective medical findings of record. *See* 20 C.F.R. § 404.1529(c)(3) (providing that the SSA "will consider all of the evidence presented, including information about [a claimant's] prior work record, [a claimant's] statements about [her] symptoms, evidence submitted by [her] medical sources, and observations by [the SSA's] employees and other persons"). With respect to Plaintiff's mental abilities, mental status findings showed that Plaintiff was cooperative and had full orientation, intact memory, coherent and goal-directed thoughts, normal memory, intact judgment, and normal attention/concentration. Tr. 331, 353, 367, 406, 415, 443, 462, 469, 485, 575, 583, 589, 612, 739, 744, 775, 830, 876, 882. She denied any difficulty getting along with others. Tr. 266.

Also contrary to Plaintiff's assertion, the ALJ was under no obligation to obtain new medical opinion evidence (*see* ECF No. 9-1 at 23), as the ALJ had a complete record upon which to base her decision. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."). The ALJ was under no obligation to seek additional information here, where the record contained complete treatment notes and was replete with reports of examinations, which the ALJ carefully evaluated and relied upon in support of her decision.

For the reasons detailed above, the Court finds that substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). Plaintiff's challenges are based on disagreement with the ALJ's weighing of the evidence in the record. However, such a challenge does not warrant reversal of the ALJ's decision. *See Krull v. Colvin*, 669 Fed. Appx. 31, 32 (2d Cir. 2016).

While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is

not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations omitted).

<u>**CONCLUSION**</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE